UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| QUINCY THURMAN, | ) ) ) | |
| Plaintiff, | ) ) | Civil No. 3:21-cv-00013-GFVT |
| V. | ) ) ) | **MEMORANDUM OPINION** |
| CITY OF FRANKFORT, *et al.*, | ) ) ) | **&** **ORDER** |
| Defendants. | ) ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendants' Partial Motion to Dismiss [R. 5-1.] On March 16, 2021, Mr. Quincy Thurman filed a Complaint against the City of Frankfort and various other defendants alleging that he was refused several promotions and discriminated against because of his race and disability. [R. 1.] In response, Defendants move for partial dismissal of Mr. Thurman's claims. [R. 5.] Upon review, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Partial Motion to Dismiss [R. 5-1.]

**I**

Plaintiff Quincy Thurman is an African American man who has been employed by the City of Frankfort since November 1, 1998. [R. 1 at 7.] Mr. Thurman also has a medical diagnosis of Bell's Palsy. *Id.* at 2. In his Complaint, Mr. Thurman alleges that, since 1998, he has applied for ten positions within the City of Frankfort from which he has been rejected in favor of Caucasian applicants who were "less qualified and had less seniority." [R. 1 at 7-9.] Mr. Thurman further contends that the City maintains an entity-wide scheme of racial discrimination. In support, Mr. Thurman alleges that he has been, and continues to be, subjected

to racial slurs and acts by employees of the City and that many of these instances have occurred in the presence of superiors who have taken no disciplinary action in response. [R. 1 at 11-12.] Finally, Mr. Thurman alleges that the City has discriminated against him because of his Bell's Palsy diagnosis. [R. 1 at 14.] As a result of Mr. Thurman's alleged experiences, he brings suit against the City and various employees, arguing that Defendants have racially discriminated against him, violated the Americans with Disability Act, engaged in a conspiracy and retaliation, are liable for negligent supervision and intentional infliction of emotional distress, and that vicarious liable is appropriate. [R. 1 at 15-28.] And, though not explicitly stated in his Complaint, Defendants surmise Mr. Thurman to have "alleged a violation of § 1983 through his allegation of [their] failure to supervise." [R. 5-1 at 2.] In response, Defendants move for partial dismissal of Mr. Thurman's claims under Federal Rule of Civil Procedure 12(b)(6). [R. 5-1.]

II

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inference." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

The Supreme Court has explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). *See also Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 ( 6th

2

Cir. 2009). Stated otherwise, it is not enough for a claim to be merely possible; it must also be "plausible." *See Courie*, 577 F.3d at 630. According to the Court, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Moreover, under limited circumstances, a claim may be rendered plausible if a plaintiff pleads its "information and belief" with supporting facts. *See Modern Holdings v. Corning Incorporated*, 2015 U.S. Dist. LEXIS 41134 at *12 (E.D. Ky. 2015) ("[w]hile pleading on information and belief cannot insulate a plaintiff at the 12(b)(6) stage, *Iqbal* did not render pleading on information entirely ineffectual"); *e.g.*, *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) ("[t]he *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant . . .")).

### A

### 1

In support of dismissal, Defendants first argue that Mr. Thurman's ADA, conspiracy, and IIED claims "do not meet the minimum pleading requirements set forth by FRCP 8" and should be dismissed.[1] [R. 5-1 at 3-5.] Specifically, Defendants argue that Mr. Thurman fails to plead facts which give rise to a plausible inference that each material element necessary for recovery

---

[1] Though Defendants argue that Mr. Thurman's ADA, conspiracy, and IIED claims were insufficiently pled more thoroughly in later sections of their Motion to Dismiss, the Court combines its analysis of these three sections for judicial efficiency. [*See* R. 5-1 at 3-5, 8-15.]

3

will be satisfied.² [*See* R. 5-1 at 4.] But, upon review, the Court only Mr. Thurman's conspiracy claim to have been insufficiently pled.

Defendants first attack the sufficiency of the pleading of Mr. Thurman's ADA claim. In his Complaint, Mr. Thurman alleges that "upon information and belief [he] has been disciplined and passed over for promotions" because of a symptom of his medical condition which renders his face partially paralyzed. [R. 1 at 15.] In response, Defendants cite case law indicating that a prima facie case of ADA discrimination must be proven by either direct or circumstantial evidence. [R. 5-1 at 8 (citing *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 810 (6th Cir. 1999)).] Defendants then cite cases that describe the framework applied in ADA cases under both direct and circumstantial theories of evidence and argue that Mr. Thurman has failed to sufficiently plead each element of a prima facie case under the ADA to survive a motion to dismiss. *See id.* at 8-9 (citing *Banks v. Bosch Rexroth Corp.*, 15 F.Supp.3d 681 (E.D. Ky. April 14, 2014) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). In opposition, Mr. Thurman contends that he has sufficiently pled his ADA claim because he "is not required to include all facts necessary to show a prima facie case of discrimination under […] *McDonnell Douglas* […]" and that he has provided sufficient facts in his Complaint which give rise to a plausible inference that he was discriminated against because of his disability. [R. 6 at 8-9 (citing *Witte v. Rippe & Kingston Systems, Inc.*, 358 F.Supp.2d 658, 666 (S.D. Ohio Feb. 28, 2005) (citing *Swierkiewicz v. Soreman*, 535 U.S. 506 (2002)).]

Mr. Thurman is correct that he need not plead a prima facie case of disability discrimination to survive a motion to dismiss. In *Swierkiewicz*, the Supreme Court ruled that

---

² Defendants also indicate, in one sentence, that Mr. Thurman has failed to plead his "implication of a violation pursuant to § 1983" and that his implication should also be dismissed. [*See* R. 5-1 at 3.] Because this argument is unclear, the Court declines to analyze it.

4

"[t]he prima facie case under *McDonnell Douglas* [..] is an evidentiary standard, not a pleading requirement," and that "the prima facie case should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz*, 534 U.S. at 511.  Although focused specifically on Title VII, the rationale behind *Swierkiewicz* naturally extends to the ADA.  *See*, *e.g.*, *Dreibelbis v. Cty. of Berks*, 439 F.Supp.3d 304, 313 (E.D. Pa. Feb. 7, 2020) ("the same sufficiency-of-pleadings analysis that 'informs' a court's inquiry under Title VII should similarly inform a court's inquiry in the context of a discrimination claim under the ADA."). Consequently, Mr. Thurman is only required to plead a plausible case of disability discrimination.  And, though plausibility might be established more easily by a plaintiff's pleading of a complete prima facie case of discrimination, the requirements of Rule 8 are not as inflexible as Defendants contend.

Moreover despite its non-requirement, Mr. Thurman has pled a complete prima facie case of disability discrimination that easily satisfies the *Twombly*/*Iqbal* plausibility standard.  To establish a prima facie case of discrimination under the ADA, a plaintiff must prove that:

> (1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he] is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability.

*Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) (citing *Dillery v. City of Sandusky*, 98 F.3d 562, 567 (6th Cir. 2005)).  In his Complaint, Mr. Thurman indicates that he "has a diagnosis of Bell's Palsy," that his "condition does not interfere with the performance of his duties," and that he has been disciplined and passed over for promotions because of a side-effect of his medical condition that has rendered him paralyzed with a permanent "smirk on his face." [R. 1

at 14-15.] Accordingly, Mr. Thurman has sufficiently pled each element of the prima facie case of a claim for discrimination under the ADA and has satisfied the requirements of Rule 8.[3]

**2**

Defendants next argue that Mr. Thurman's IIED claim is insufficiently pled because it is "preempted by the other claims he asserts in this matter." *Id.* at 15. Specifically, Defendants contend that Mr. Thurman has inappropriately pled an IIED claim because "a litigant cannot prevail on both a negligence claim and an intentional infliction of emotional distress claim on the same set of facts." [R. 7 at 7 (citing *Childers v. Geile*, 367 S.W.3d 576 (Ky. 2012).] And under this principle, Defendants assert that Mr. Thurman's IIED claim must be dismissed because Kentucky law does not permit double recovery. *See id.* In response, Mr. Thurman argues that "although no recovery can be had for negligence and intentional infliction of emotional distress on the same set of facts, the matter can be pled in the alternative." [R. 6 at 12 (citing *Childers v. Gile*, 367 S.W.3d 576, 581 (Ky. 2012)).]. Accordingly, Mr. Thurman alleges that he has sufficiently pled the plausible existence of outrageous conduct and that he should be permitted to look for further evidence through discovery. *See id.*

Mr. Thurman's IIED claim is not subsumed by his negligence claim. Defendants argue that, because Mr. Thurman has pled a claim of negligence, he cannot alternatively plead a claim of IIED because any damages he is owed due to emotional distress would be compensated under his negligence claim. [*See* R. 7 at 7.] But the Kentucky Supreme Court disagrees. In *Childers v. Geile*, the Court ruled that while IIED "is a gap-filler tort, […] [i]t is also [] a stand-alone tort

---

[3] The Court notes that although Mr. Thurman begins each factual pleading with "upon information and belief," he provides facts in supplement which indicate that his pleading is not simply based on information and belief but is based on known facts. Consequently, the Court finds his provided facts sufficient to rise to the level of plausibility. [*See, e.g.*, R. 1 at 15.]

6

under the right facts." 367 S.W.3d at 582.  Accordingly, while "there can be only one recovery on a given set of facts," IIED can be pled alternatively to negligence.  *See id.* (finding two separate bases for emotional distress damages present when a doctor falsely informed a patient of her diagnosis and then allegedly provided her unnecessary medication).  By applying *Childers*, the Court concludes that while Mr. Thurman can plead both negligence and IIED, he cannot recover damages under each claim.  As a result, if discovery indicates that there are not separate instances in which either intention or negligence singularly led to his harm, one claim may be subject to dismissal.  But dismissal at this point in litigation is not warranted.

### 3

Finally, Defendants attack the sufficiency of the pleading of Mr. Thurman's conspiracy claim.  [R. 5-1 at 10-15.]  Although Mr. Thurman does not indicate whether he asserts the existence of a conspiracy under state or federal law, his Complaint generally alleges the existence of an entity-wide conspiracy of discrimination and retaliation.  [R. 1 at 19-20.]  Because Mr. Thurman's Complaint does not provide specificity, Defendants defend against both state and federal conspiracy.  First, under Kentucky conspiracy law, Defendants contend that a "proponent must show an unlawful or corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Id.* at 11 (citing *Peoples Bank of Northern Kentucky, Inc. v. Crowe Chizek and Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008)).  Defendants further argue that "[i]naction does not amount to conspiracy," and that Mr. Thurman has failed to plead facts which indicate the presence of a conspiracy to commit any tort or discriminate against him.  [*See* R. 5-1 at 11-12 (citing *James v. Wilson*, 95 S.W.3d 875 (Ky. Ct. App. 2002).]  Moreover, Defendants argue that Mr. Thurman has insufficiently pled the existence of a conspiracy under state law under the "intracorporate conspiracy doctrine."

Defendants contend that, under that doctrine, employees of a corporation cannot form a conspiracy with their own corporation or with their coworkers because a corporation and its employees constitute "the same legal entity" and, accordingly, are not two separate beings capable of conspiring together. *Id.* at 12-13 (citing *Cowing v. Commare*, 499 S.W.3d 291, 294 (Ky. Ct. App. 2016) and *Tabb v. District of Columbia*, 477 F.Supp.2d 185, 190 (D.D.C. 2007)).

Alternatively, Defendants argue that Mr. Thurman fails to sufficiently plead conspiracy under federal law. [R. 5-1 at 13-15.] Although Defendants agree that "civil conspiracy claims are actionable pursuant to § 1983," they contend "it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Heyne v. Metro. Nashville Pub. Sch.*, 653 F.3d 556, 563 (6th Cir. 2011)). And, moreover, Defendants argue that, under § 1983, "Plaintiff must allege an official policy or custom caused his injury." *Id.* at 14 (citing *Webb v. Jessamine Cty. Fiscal Court*, 802 F.Supp.2d 870, 885 (E.D. Ky. 2011). Because Defendants argue that Mr. Thurman has neither pled federal conspiracy with "some degree of specificity," nor pled that "an official policy or custom caused his injury," they allege that his conspiracy claim should be dismissed. *Id.* at 14-15.

In opposition, Mr. Thurman argues that his conspiracy claim is properly pled as to both state and federal law. *Id.* at 9-11. Under state law, Mr. Thurman contends that he has "sufficiently pled that Defendants have acted in concert with one another […]" and that "[b]y common design or scheme, the Defendants have been aware and gone along with the unlawful acts of others […]." *Id.* at 10. And, because he alleges that he has sufficiently pled a state law conspiracy claim, Mr. Thurman contends that he should be permitted to litigate further whether the Defendants have conspired to discriminate against him and "other similarly situated

8

minorities." *Id.* Similarly, under federal law, Mr. Thurman alleges that Defendants have been properly placed on notice of his assertion that they acted "in furtherance of the unlawful intentional discrimination" which he and others have endured. *Id.* at 11. Ultimately, Mr. Thurman contends that he "should not be limited in his quest to seek damages for the conspiratorial conduct of the Defendants by any cause of action available to him." *Id.*

Regardless of whether Mr. Thurman intended to assert a state or federal conspiracy claim, his pleading as to Count III is insufficient. In his Complaint, Mr. Thurman alleges that Defendants conspired to prohibit him and "other African American and/or black persons [] equal protection of the laws or of equal privileges and immunities under the laws, including but not limited to fair and equal terms and conditions of employment […]." [R. 1 at 19.] Although Mr. Thurman contends that City supervisors "created a culture of hostility and discriminatory practices […]," by conspiracy, he provides no evidence of the existence of an agreement between any Defendant in this matter. Consequently, Mr. Thurman has failed to plead facts which give rise to the plausible existence of a federal conspiracy. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) ("Although circumstantial evidence may prove a conspiracy, '[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Similarly, under state law, Mr. Thurman has failed to plead the presence of an agreement between Defendants to engages in concerted action to cause him harm, aside from his own belief of its existence.[4] Though information and belief pleading can render a claim plausible under

---

[4] The Court need not determine the applicability of the "intracorporate doctrine" as Defendant contends because Mr. Thurman does not simply fail to plead the existence of an agreement between qualified actors but fails to sufficiently plead the existence of an agreement at all.

9

certain circumstances, a plaintiff must plead supporting facts which render his claim plausible beyond just his personal belief that it is true. *See, e.g., Germain v. Teca Pharms., USA, Inc.*, 756 F.3d 917, 931 (6th Cir. 2014) ("[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true."); *Modern Holdings v. Coning Inc.*, LEXIS 41134 at *12 (E.D. Ky. March 31, 2015) (finding the use of information and belief pleading appropriate when plaintiff pled supporting facts that rendered his claim plausible."). Accordingly, Mr. Thurman's conspiracy claim fails to survive dismissal.

### B

Next, Defendants argue that sovereign immunity requires the dismissal of Mr. Thurman's state law claims against the City. [R. 5-1 at 5-8.] But sovereign immunity is inapplicable in this matter. In his Complaint, Mr. Thurman alleges that the City and its employees engaged in IIED and negligent supervision and that the City is vicariously liable for the actions of its supervisors, agents, and employees. [R. 1 at 22-27.] In response, Defendants argue that Mr. Thurman's state law claims against the City "fail because [it] is entitled to immunity pursuant to the Claims Against Local Government Act." [R. 5-1 at 5.] Under CALGA, the Kentucky legislature waived sovereign immunity for certain claims brought against local governments including:

> Every action in tort against any local government in [Kentucky] for death, personal injury or property damages proximately caused by:
> (a) Any defect or hazardous condition in public lands, buildings or other public property, including personalty;
> (b) Any act or omission of any employee, while acting within the scope of his employment or duties; or
> (c) Any act or omission of a person other than an employee for which the local government is or may be liable

KRS § 65.2001. And CALGA defines "action in tort" as "any claim for money damages based upon negligence, medical malpractice, intentional tort, nuisance, products liability and strict liability, and also includes any wrongful death or survival-type action." KRS § 65.200(1). But,

despite its waiver, the legislature provides that sovereign immunity is maintained by a local government when, among other situations, it engages in "the exercise of discretion when in the face of competing demands [and] determines whether and how to utilize or apply existing resources […]." KRS § 65.2003.

In their briefing, Defendants appear to concede that sovereign immunity for Mr. Thurman's IIED and negligent supervision claims has been waived unless the actions of the City and its employees fall within the scope of an exception to the waiver. [*See* R. 5-1 at 5-6.] Moreover, Defendants do not argue whether the City constitutes a "local government" bound to CALGA's waiver of immunity. *See id.* Instead, Defendants contend that their actions regarding hiring constitute an exception under CALGA as an "exercise of discretion" regarding the competing demands of resources in hiring employees. *See id.* at 7-8. And, in support, Defendants cite a non-binding case in which a local government was deemed to have engaged in an action covered by this exception to CALGA's waiver. *Id.* at 7 (citing *Madden v. City of Louisville*, 2004 Ky. App. Unpub. LEXIS 581 (Ky. Ct. App. 2004)). In response, Mr. Thurman argues that CALGA's resource discretion exception to its waiver of sovereign immunity is inapplicable because "[r]acially motivated discriminatory employment practices and discrimination against a qualified individual with a disability are not a lawful in discretion with respect to local government needs." [R. 6 at 6.] And, additionally, Mr. Thurman argues that discriminatory practice cannot constitute an act of "discretion" under CALGA because discrimination is not practiced in good faith. *Id.* at 7 (citing *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001)).

Upon review, the Court declines to dismiss Mr. Thurman's state law claims. First, due to insufficient briefing by the parties, the Court makes no finding as to whether CALGA's waiver

11

of sovereign immunity applies to the specific state law claims asserted by Mr. Thurman or whether the City's actions were made in good faith. But, regardless, the Court finds that CALGA's resource discretion exception is inapplicable to Mr. Thurman's state law claims. Despite Defendants' expansive argument, Courts have applied this exception when, for example, a local government places other projects at a "higher priority" than "alleviating the flooding of [a plaintiff's] residence." *See Madden*, LEXIS 581 at *21; *see also Allen v. Louisville-Jefferson Cty. Metro. Sewer Dist.*, 2019 Ky. App. Unpub. LEXIS 474 at n.1 (finding that Louisville's decision "to not create an alternative notification system" for flood warnings to be a discretionary act "dependent upon how [the City] decides to allocate its monetary resources."). Though Defendants argue the City exercised discretion regarding its monetary resources through its hiring practices, they cite no case law that indicates the resource discretion exception extends beyond decisions regarding tangible resources to acts as broad as allegedly discriminating based on race and disability. Consequently, Defendants' argument is unpersuasive.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss [R. 5-1] is **GRANTED IN PART AND DENIED IN PART**;

2. Count III of Plaintiff's Complaint is **DISMISSED** for failure to state a claim.


This the 7th day of March, 2022.

Gregory F. Van Tatenhove
United States District Judge

13