UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| QUINCY THURMAN, | ) | |
| Plaintiff | ) ) ) | Civil No. 3:21-cv-00013-GFVT |
| v. | ) ) | |
| CITY OF FRANKFORT, *et al.*, | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) ) | |

\*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*

This matter is before the Court on the Defendants' motion *in limine*. [R. 152.] For the reasons that follow, the Defendants' motion *in limine* will be **GRANTED IN PART** and **DENIED IN PART**.

**I**

As the Court recently detailed in its opinion on the Defendants' motion for summary judgment, [R. 162], this is a case involving decades of alleged racial discrimination in employment. Mr. Thurman worked in the City of Frankfort's Street Department for decades and now alleges his tenure was marred by failures to promote and train him on account of his race. He also brings allegations of a racially hostile workplace and retaliation by decision makers when he brought his plight to light. Based on the nature of Defendants' *in limine* requests, there is no need to belabor the facts of this case here, which are more fully set out in the Court's opinion at [R. 162.]

Defendants are seeking to exclude the following evidence:

- Evidence regarding the financial condition of the parties;
- Evidence regarding liability insurance;
- Evidence regarding other claims or lawsuits;
- Evidence regarding subsequent remedial measures;
- Character evidence concerning any defendant;
- Testimony of unidentified experts;
- Remarks regarding the Defendants' decision to call or not call witnesses;
- Evidence regarding medical records or bills not supported by competent testimony; and
- Expert reports.

[R. 152.]

## II

### A

"A motion *in limine* is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). "While the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to a district court's inherent authority to manage the course of trials." *Scheel v. Harris*, 2012 WL 3879279, at *1 (E.D. Ky. Sept. 6, 2012) (citing *Luce*, 469 U.S. at 41).

Although parties are permitted to ask the court to make *in limine* rulings, "there is no right to an *in limine* ruling." *Id.* (citing *Huddleston v. United States*, 485 U.S. 681, 688–89 (1988)). Furthermore, as a case unfolds, a district court is free "in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41–42.

**B**

Here, the Defendants request nine *in limine* rulings, and the Court will address each in turn.

**1**

The Defendants first suggest that the Court should exclude any evidence of the financial condition of a party. [R. 152 at 1.] In their view the financial condition of either party is not relevant under Federal Rule of Evidence 401 and is therefore inadmissible under Rule 402. *Id*. In response, Mr. Thurman emphasizes that the "the loss of income and wealth Thurman suffered due to the discriminatory practices of the Defendants is relevant to the matter at hand and evidence of the adverse employment action he suffered." [R. 159 at 2.] Mr. Thurman contends he should be able to introduce evidence of the benefits and income he did receive and contrast that with what he should have received, absent any alleged discriminatory conduct. *Id*.

Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." As Mr. Thurman rightly points out, relevancy is a low bar. *Cambio Health Solutions, LLC v. Reardon*, 234 Fed.App'x 331, 338 (6th Cir. 2007). The Court thinks that Mr. Thurman has the better of the argument. While the lofty principle that "[a] case should be tried on the merits without reference to the wealth or poverty of the parties" is generally admirable, here evidence of Mr. Thurman's financial condition – and evidence of possible financial conditions absent discrimination – is relevant to both his damages and Defendants' alleged discrimination. However, the financial condition of the City and other Defendants appears to be of little to no relevance, and such evidence must be excluded. Therefore, the Defendants' request will be granted in part and denied in part.

3

**2**

Federal Rule of Evidence 411 provides that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." It is admissible for other purposes, such as proving control or bias. *Id*. The Defendants have asked this court to exclude any evidence pertaining to liability insurance. [R. 152 at 2.] Mr. Thurman does not object or identify scenarios where the exceptions to Rule 411 might be applicable. [R. 159 at 2.] Accordingly, the Defendants' request will be granted.

**3**

The Defendants also seek to exclude any reference to other claims or lawsuits, based on their belief that "[p]laintiff may attempt to introduce evidence regarding allegations, purported wrongdoing and/or criminal cases involving other employees of the City of Frankfort." [R. 152 at 2.] They point to Federal Rule of Evidence 404, which prohibits introduction of character evidence – absent some exceptions – and provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

Mr. Thurman latches onto the exceptions to FRE 404, which provides that such other act evidence may be admissible for some other purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." [R. 159 at 2-3.] More specifically, Mr. Thurman contends the evidence that has motivated other claims and lawsuits will "show knowledge, absence of mistake, motive, opportunity and intent by the City of Frankfort and the Defendants to deny black individuals equal employment opportunities." *Id*. Mr. Thurman also contends that such evidence is relevant to proving pretext on the part of Defendants. *Id*. Finally, Mr. Thurman suggests that such evidence is necessary to show his

4

workplace would constitute a hostile work environment to a reasonable person and that the conditions of employment were effectively altered for black employees. *Id*.

In the employment-discrimination-law context, "other acts" evidence consists of testimony or other evidence of discrimination by the employer against non-party employees. *Griffin v. Finkbeiner*, 689 F.3d 584, 598 (6th Cir. 2012). Relying on the Supreme Court's holding in *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 380-81, 387 (2008), that lower courts should not apply a per se rule "excluding 'other acts' testimony from non-parties alleging discrimination by supervisors who did not play a role in the challenged decision," the *Griffin* decision explained that district courts should consider the "temporal and geographic proximity, whether the various decisionmakers knew of the other decisions, whether the employees were similarly situated in relevant respects, or the nature of each employee's allegations" in deciding whether to admit "other acts" evidence. *Griffin,* at 598–99. Deciding the relevance of "other acts" evidence is "a case-by-case determination that 'depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" *Id.* at 598 (quoting *Mendelsohn,* 552 U.S. at 388.)

Based on Mr. Thurman's response to the Defendants' motion for summary judgment, [R. 154], much of what he alleges involves a singular department – the Streets Department and Division of Public Works – with the same cadre of co-workers and supervisors being involved in discrimination for years. Based on Mr. Thurman's response to the Defendants' motion *in limine*, much of what he wishes to admit seems likely to be highly relevant to his specific claims and fall within one of the exceptions to FRE 404. At this point, however, much of what Mr. Thurman will reference is highly speculative, leaving this Court with little room to effectively assess the factors identified in *Griffin*. Neither party identifies other acts they take issue with or wish to

5

admit into evidence. Accordingly, the Defendants' request will be denied without prejudice, though they may ask the Court to reconsider this ruling if, during trial, they believe specific other act evidence Mr. Thurman wishes to introduce will run afoul of the factors identified in *Griffin* or be otherwise unduly prejudicial.

**4**

Federal Rule of Evidence 407 states that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for warning or instruction." However, such evidence may be admitted for another purpose "such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures." FRE 407. The Defendants note that this rule is motivated by public policy concerns and is designed to motivate parties to perform remediation without concern that such action will undermine any legal defense. [R. 152 at 2-3.] Based on FRE 407, the Defendants ask that this Court exclude "any evidence regarding subsequent training provided by the City of Frankfort to its employees pertaining to discrimination, harassment, retaliation, the Kentucky Civil Rights Act and/or Title VII" which occurred after January 31, 2023. [R. 152 at 3.]

Mr. Thurman looks to the exceptions identified in Rule 407 and argues that subsequent remedial measures that "have improved a hostile work environment or race discrimination are evidence that the City of Frankfort had the ability to control its employees and to correct or prevent discriminatory conduct by coworkers and third parties." [R. 159 at 3.] At this point the Defendants' objection seems premature, given Mr. Thurman's reliance on FRE 407's exceptions. There are multiple paths the Defendants could presumably take in litigating their case: they

6

might suggest that Mr. Thurman was not harassed, or that any harassment was insufficiently severe, or that the City was unable to control its employees or otherwise prevent the harassment. Of those, only the last would seem to involve disputing the feasibility of precautionary measures. Accordingly, the Court will deny the Defendants' request without prejudice, though they are free to ask the Court to reconsider this ruling if Rule 407 and its exceptions become contested at trial.

**5**

Similar to their third *in limine* request, the Defendants point to Federal Rule of Evidence 404(a) and now move this Court to "exclude evidence or testimony introduced by Plaintiff which references character evidence in violation of FRE 404 concerning any Defendant." [R. 152 at 3-4.]  In response, Mr. Thurman contends that "character evidence may be offered to show the City of Frankfort knew of the Defendants' racist behavior and that such behavior was ignored when promoting these same individuals to positions of authority." [R. 159 at 4.]  In his view, the City of Frankfort failed to stop, and even condoned, the harassment Mr. Thurman experienced and evidence of various individuals' racist character speaks to whether the City of Frankfort acted reasonably in how it handled the whole affair. *Id*.

The nature of this case counsels against deciding this issue too prematurely.  In a racial discrimination lawsuit discussing the issue of racism is inexorable.  While FRE 404 specifically provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait," such evidence may still come in for a myriad of other purposes, just as Mr. Thurman suggests.  It is possible some evidence of racism demonstrated by individuals involved in this case will run afoul of Rule 404 and be used to draw improper inferences; it is equally possible that other such evidence will be entirely permissible.  At this juncture the future usage of such evidence is seemingly

7

inscrutable and better handled when more clearly defined issues actually arise. Accordingly. the Defendants' request will be denied without prejudice. However, they are free to ask the Court to reconsider the issue at trial when a piece of evidence's proposed use can be more easily analyzed in context.

6

Federal Rule of Civil Procedure 26(2)(a) requires parties to disclose the identity of any witness they may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705. These rules of evidence deal with expert witnesses. Pursuant to the Scheduling Order entered by this Court, Mr. Thurman was required to disclose his experts by February 1, 2024. [R. 123.] Mr. Thurman disclosed one expert, Sara Ford of Vocational Economics, Inc., and the Defendants now ask that this Court preclude Mr. Thurman from utilizing the testimony, or reports, from any undisclosed experts on his behalf at trial. [R. 152 at 4.] Mr. Thurman does not object. [R. 159 at 4.] Accordingly, the Defendants' request will be granted.

7

The Defendants next seek to have the Court preemptively preclude Mr. Thurman, his counsel, and any witnesses called by him, from "referencing the fact that one or more particular witnesses was or was not called to testify at trial." [R. 152 at 4-5.] The Defendants cite *Elam v. Menzies*, 594 F.3d 463, 469 (6th Cir. 2010), for the idea that "[s]ome precedent exists suggesting that no adverse inference may be drawn from the failure to depose a witness who was equally available to both parties." Unpacking that decision reveals that practice is not quite so clearly in favor of precluding such references as the Defendants suggest. In determining the issue, the *Elam* decision ultimately concluded that "the more logical view is that the failure to produce is *open* to an inference *against both parties,* the particular strength of the inference against each

8

depending on the circumstances." *Id.* (citing 2 J. Wigmore, Evidence 206–08 (J. Chadbourn ed., 1979) (emphasis in original)); *see also* 2 McCormick On Evidence § 264 (6th ed.) ("When it would be natural under the circumstances for a party to call a particular witness ... and the party fails to do so, tradition has allowed the adversary to use this failure as the basis for invoking an adverse inference."). Indeed, the *Elam* decision made just such an inference in determining one party's failure to depose a doctor supported the inference that the doctor's testimony would have been adverse to that party. *Id.* Furthermore, the *Elam* decision noted that "a witness is not considered 'equally available' if … the witness has special knowledge of relevant facts for the party with the burden of proof." *Id.* (citing *Welch v. L.R. Cooke Chevrolet Co.,* 314 Ky. 634, 236 S.W.2d 690, 691–92 (1950)). As Mr. Thurman notes, this is a case involving multiple shifting burdens of proof, complicating the issue. [R. 159 at 5.]

The *Elam* decision already suggests that making such inferences is a permissible practice, but Mr. Thurman also suggests that a blanket ruling at this point on this issue would be premature. [R. 159 at 5.] The Court agrees. The Defendants' – and Mr. Thurman's – decision to call or not call witnesses is strategic and may develop as trial unfolds. Adding shifting burdens into the mix only further complicates matters. Therefore, the Defendants' request will be denied without prejudice, though they are free to ask the Court to reconsider this decision as circumstances change.

**8**

The Defendants seek to exclude any medical records and bills not supported by competent testimony. [R. 152 at 5.] They contend that the Sixth Circuit has adopted the understanding that "the connection between the negligent act and the injury must be shown by expert medical testimony and said testimony must be that causation is probable not merely

9

possible." *Vance, by & Through Hammons v. United States*, 182 F.3d 920 (Table), 1999 WL 455435 at *6 (6th Cir. 1999). In response, Mr. Thurman emphasizes that *Vance* was a medical malpractice case and that its rule is not applicable in the case at hand. [R. 159 at 6.] Indeed, Mr. Thurman relies on *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992), for the suggestion that the common knowledge or experience of laymen is enough to recognize causation in this case. [R. 159 at 6.] In Mr. Thurman's view it is no great leap to determine that the physical conditions he complains of – erectile dysfunction, constipation, bruxism, and the exacerbation of his existing medical condition, Bell's Palsy – are connected to the emotional distress and stress caused by his hostile work environment. *Id*.

The Court agrees with Mr. Thurman. In *Vance*, for example, the case involved a doctor's alleged failure to diagnose the plaintiff's pneumonia and whether that failure fell below the standard of care. *Vance*, 1999 WL 455435 at *7. That is a situation where a layperson jury would have little understanding of diagnosing pneumonia or what a reasonable doctor should have done in like circumstances. By contrast this case, at its core, is about racial discrimination in the workplace – not medical malpractice or some other medically nuanced issue. Indeed, some of the conditions Mr. Thurman identifies – erectile dysfunction, constipation, and bruxism (i.e. teeth grinding) – are conditions many people can unfortunately expect to experience when they confront stress in their own lives. Because a layperson could understand these issues and their connection to Mr. Thurman's workplace stress without the need for expert testimony, the Defendants' request will be denied.

**9**

Finally, the Defendants move to prevent Mr. Thurman from seeking admission of expert reports into evidence or allowing the jury to review the reports of any expert witness in this case.

10

[R. 152 at 6.] They note that expert reports are hearsay and thus inadmissible under FRE 801 and FRE 802. Mr. Thurman does not contest that foundational assertion, but "would like to preserve his ability to introduce expert reports if Defendants do something at trial which renders the admission of the expert reports into evidence permissible." [R. 159 at 7.] Mr. Thurman does not identify what he expects that occasion to be. Accordingly, the Defendants' request will be granted, and the expert reports in this case will be excluded unless an applicable hearsay exception or usage otherwise applies.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' motion *in limine* **[R. 152]** is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The request to exclude evidence regarding the financial condition of the parties is **GRANTED IN PART** and **DENIED IN PART** consistent with section II.B.1 supra;

    b. The request to exclude evidence regarding liability insurance is **GRANTED**;

    c. The request to exclude evidence regarding other claims or lawsuits is **DENIED without prejudice**;

    d. The request to exclude evidence regarding subsequent remedial measures is **DENIED without prejudice;**

    e. The request to exclude evidence regarding the character of the defendants is **DENIED**;

    f. The request to exclude testimony of unidentified experts is **GRANTED**;

g. The request to exclude remarks regarding the Defendants' decision to call or not call witnesses is **DENIED without prejudice**;

h. The request to exclude medical records and bills not supported by competent testimony is **DENIED**; and

i. The request to exclude expert reports from evidence is **GRANTED**.

This the 17th day of January 2025.

Gregory F. Van Tatenhove
United States District Judge